NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

EDGECO. INC.,                           :
                   Plaintiff,      :
                   v.              :    Civil Action No.  02-2624 (JAG)

FASTCAP, LLC,                           :
and PAUL AKERS,                         :
                   Defendants.     :
_____:

FASTCAP, LLC,                           :    OPINION
and PAUL AKERS,                         :
                   Counterclaimants, :
                   v.              :

EDGECO. INC.,                           :
                   Counterclaim Defendant. :
_____:

**GREENAWAY, JR., U.S.D.J.**

This matter having come before the Court, pursuant to L. CIV. R. 7.1, on Plaintiff/ Counterclaim Defendant EdgeCo., Inc.'s ("Plaintiff" or "EdgeCo.") motion for reconsideration of this Court's Opinion, entered July 8, 2005.  This is a patent infringement suit in which Plaintiff seeks a declaratory judgment that its peel and stick screw covers do not infringe claims 1-11 of United States Patent No. 5,997,229 ("the '229 Patent") and a declaration that claims 13-

1

16 of the '229 patent are invalid as anticipated by prior art.[1]  On April 12, 2004, EdgeCo. moved for summary judgment on its claims seeking a declaration of non-infringement on claims 1-11 of the '229 patent and invalidity on claims 13-16 of the patent-in-suit.  Defendant/Counterclaim Plaintiff FastCap cross-moved for summary judgment on the grounds that EdgeCo. infringes claim 13 of the '229 patent.  Defendants/Counterclaimant FastCap also moved to strike the affidavits of Arthur Jacob, Esq. and for dismissal of EdgeCo.'s seventh affirmative defense[2] alleging that the '229 patent is invalid because it is unenforceable.

This Court entered an Opinion on July 8, 2005 (hereinafter "Summary Judgment Opinion") granting Defendant FastCap's motion for summary judgment on infringement of the '229 patent and denying Plaintiff EdgeCo.'s motion for summary judgment on invalidity and non-infringement.  This Court also granted in part and denied in part FastCap's motion to strike the affidavits of Arthur Jacob, Esq.

On July 29, 2005, EdgeCo. filed a motion for reconsideration, arguing that the Court should not have admitted the expert testimony of Greg Davis until the Court developed an adequate record that contemplated Mr. Davis's qualifications as to material such as wood and veneer, pursuant <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 579-80 (1993).

---

[1] Plaintiff/Counterclaim Defendant EdgeCo. also moved for the dismissal of Defendant FastCap, LLC as a party in the action because FastCap, LLC, as a licensee of the '229 patent, lacked standing to bring claims under the patent-in-suit.  (Pl./Countercl. Def. Mem. Supp. Partial Summ. J. at 15-16.)  On December 16, 2004, this Court entered an Order dismissing Defendant/Counterclaimant FastCap, LLC, pursuant to the parties' agreement by correspondence and FED. R. CIV. P. 41(a)(2).  While there is only one remaining Defendant, to avoid confusion, this Opinion adopts parties' plural form and reference designating the remaining Defendant/Counterclaimant Paul Akers as "FastCap."

[2] As reflected in this Court's Order, dated December 9, 2004, EdgeCo. voluntarily abandoned its seventh affirmative defense which alleged that the '229 patent is unenforceable.

EdgeCo. also argues that the Court erred in granting, in part, FastCap's motion to strike the testimony of Arthur Jacob, Esq.

This Court finds that there are no intervening changes in controlling law, no evidence made available that was not previously available, nor a clear error of law in the Summary Judgment Opinion of this Court.  Plaintiff merely seeks a revisitation of the arguments already considered by this Court in rendering its earlier decision, and, as a result, fails to carry the burden of a moving party on a motion for reargument.  For the foregoing reasons, Plaintiff's motion seeking reconsideration is denied.

## **Legal Standard and Analysis**

The standard of review for a motion for reargument, pursuant to Local Civil Rule 7.1(i), "is quite high, and therefore relief under this rule is granted very sparingly."  See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994) (citation omitted).  A motion for reargument may only be granted where there is (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available at the time of the Court's prior ruling; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  See Max's Seafood Café ex. rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

In accordance with Local Rule 7.1(i), the moving party must set "forth concisely the matters or controlling decisions which counsel believes the Judge . . . has overlooked."  N.J. Federal Practice Rules, Rule 7.1(i)(Lite).  "[A] party must show more than a disagreement with the Court's decision" and "a mere recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden."  Pittston

Co. v. Sedgwick James of New York, Inc., 971 F. Supp. 915, 918 (D.N.J. 1997) (internal quotations and citations omitted).

I.     **Expert Report of Greg Davis**

EdgeCo. contends that a Daubert hearing was necessary to determine that Greg Davis had the adequate background in the materials presented in the '229 patent. (Pl.'s. Br. in Supp. of its Mot. for Reconsideration of Portions of the December 30, 2004 Order, hereinafter "Pl.'s. Br." at 3-4.)  In addition, EdgeCo. argues that testimony appearing in Mr. Davis's affidavit and supplemental affidavit were inappropriate for consideration by the Court because the information should have been contained in Mr. Davis's expert report. (Id. at 4.)

The admission of expert testimony is governed by Federal Rule 702, which provides, in relevant part, that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under Rule 702 of the Federal Rules of Evidence, there are three substantive restrictions on expert testimony: relevance, reliability, and helpfulness to the trier of fact's evaluation of such evidence. Elcock v. Kmart Corp., 233 F.3d 734, 741-43 (3d Cir. 2000).

The Daubert court outlined several factors trial courts should use to determine the reliability of expert testimony. The Daubert factors for analyzing the reliability of testimony include: (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards for controlling the error; and, (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. See

Daubert, 509 U.S. at 592-95.  These factors are to be used as a tool and framework for conducting the inquiry into the reliability of expert testimony.  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151 (1999).  "Before an expert witness may offer an opinion pursuant to Rule 702[,] he must first be qualified by virtue of specialized expertise."  Elcock, 233 F.3d at 741.  Either practical experience or academic training and credentials may be sufficient to satisfy the standard.  Id.  Courts have interpreted the specialized knowledge requirement liberally, extending the policy to the substantive and formal qualification of experts.  See, e.g., In re Paoli, 35 F.3d 717, 741 (3d Cir. 1994).

In its motion for summary judgment, EdgeCo. argued that Mr. Davis lacked the proper academic credentials or practical experience to testify on the issues presented in his expert report, namely, the construction of the terminology related to the hardness specification.  In support of its motion for reconsideration and after reviewing the Court's very detailed review of Mr. Davis's academic and professional credentials, EdgeCo. argues that Mr. Davis's deficiency lies in the fact that he has not specified that he has worked with wood and veneer.

In the Summary Judgment Opinion, this Court found that Mr. Davis is qualified to testify as an expert in this matter.  FastCap laid a proper foundation in support of Mr. Davis's expert report, pointing to the wealth of his experience designing and fabricating tools for injection molding and implementing designs and managing plastics molding facilities and machinery.  Mr. Davis's academic credentials and his professional experience support the conclusion that he is competent to testify about the testing standards for designing a generally planar disc of veneer intended to cover a screw hole.  Mr. Davis's credentials establish that he has a history of working with plastics and polyvinyl chloride ("PVC") products, the material from which EeeZee Covers and the FASTCAP® are made. (Davis Expert Report at ¶¶ 2-3, 11-15.)

In its instant motion, EdgeCo. challenges Mr. Davis's credentials regarding wood and veneer. (Pl.'s Br. at 3-4.) FastCap's expert, Greg Davis, graduated from Capllono College in North Vancouver, British Columbia in 1972 and completed additional course work at the University of California at Berkeley and at Western Washington University, including course work in Plastics Technology and Tool Design from 1978 until 1985. (Davis Expert Report at ¶¶ 2-3.) Mr. Davis held various positions at tool manufacturing companies from 1979 through the present and took the position of Chief Operating Officer at FastCap, LLC in 1998. (Davis Expert Report at ¶¶ 2-3.) In 2001, Mr. Davis assumed his current position as International Sales Manager at FastCap, LLC. (Davis Expert Report at ¶ 8.)

Thus, this Court is confident that Mr. Davis's experience and qualifications, working with a variety of materials, designing tools, and participation in the manufacture and sale of the product of the patent-at-issue, are sufficient to satisfy the requirements regarding the reliability of his testimony in this matter.

## II.     Admission of Testimony of Arthur Jacob

EdgeCo. also claims that this Court erred when it disregarded testimony by Mr. Jacob that is competent and admissible and raises "an issue of material fact insofar as the significance of the All Metal Door product as prior art." (Pl.'s Br. at 5.)

In the moving papers reviewed and discussed in the Summary Judgment Opinion, FastCap moved to strike the declaration of Arthur Jacob, arguing that the declaration is "nothing more than inadmissible hearsay and attorney opinion argument." (Defs./Counturcl. Pls.' Br. Supp. Cross-Mot. Strike at 2.) FastCap challenges Mr. Jacob's scientific and legal conclusions about the similarities among the FASTCAP®, the EeeZee Cover, and All Metal's screw covers. (Id.)

EdgeCo. does not dispute that Mr. Arthur Jacob has not been proffered as an expert witness. (Pl.'s Br. at 5.) Rather, EdgeCo. argues that Mr. Jacob is a lay witness with "first hand observations" that are "rationally based on the perception of the witness who *is trained and experienced in reading and understanding patent claims."* (Id.(emphasis added).)

Mr. Jacob has a bachelor of science degree in mechanical engineering from the Massachusetts Institute of Technology and a juris doctor from The George Washington University Law School. (Decl. Arthur Jacob at ¶ 2.) He is admitted to practice in New Jersey. (Id. at ¶ 1.) Mr. Jacob's declaration recounts the background facts regarding correspondence between FastCap and EdgeCo. prior to the commencement of this litigation. (Id.) Mr. Jacob sent a letter to FastCap on EdgeCo.'s behalf on two separate occasions. (Id.) In his correspondence of November and December of 2001, Mr. Jacob indicated that he had "conducted an investigation of the allegations of patent infringement" and that the "results of [his] investigation confirmed that the EdgeCo. peel and stick screw covers were identical in all significant aspects to peel and stick screw covers that had been on sale since 1992." (Id. at ¶ 9.) Mr. Jacob enclosed samples of the All Metal peel and stick screw covers in the December 2001 letter to FastCap. (Id. at ¶ 10.)

In addition, Mr. Jacob claims to have conducted an evaluation of the All Metal screw covers, the FASTCAP®, and EeeZee Covers and, based on his investigations, he drew certain legal conclusions regarding the validity of the '229 patent. Mr. Jacob contends that he "compared the [samples of the All Metal and EdgeCo. peel and stick screw covers] by putting them in [his] hand, examining them and using [his] fingers to feel them and test their bending characteristics." (Supplemental Decl. Arthur Jacob at ¶ 9.) According to Mr. Jacob, "EdgeCo. and All Metal screw covers . . . have no discernable difference in stiffness and bending

characteristics, in terms of resistance to bending and resiliency." (Id. at ¶ 10.)  Therefore, Mr. Jacob concluded that "the EdgeCo. peel and stick screw covers have virtually the same characteristics as the peel and stick screw covers made by All Metal Stamping." (Decl. Arthur Jacob at ¶ 11.)

In his supplemental declaration, Mr. Jacob claims that he tested the All Metal screw covers in accordance with the specification of the '229 patent while in an office and concluded that All Metal screw covers "fit easily within the parameters of deflection referred to in the '229 patent." (Supplemental Decl. Arthur Jacob at ¶ 18.)  EdgeCo. argues that Mr. Jacob's testimony is lay witness testimony and further argues that Mr. Jacob is "eminently" qualified to render an opinion as a lay witness in this matter.

This Court denied FastCap's motion to strike Mr. Jacob's testimony, as a lay witness, regarding his retention by EdgeCo. and the correspondence exchanged in the development of the litigation.  Mr. Jacob, as the author of the letters sent in November and December of 2001, has personal knowledge of the correspondence between EdgeCo. and FastCap.[3]

---

[3] In reviewing Mr. Jacob's credentials in the Summary Judgment Opinion, this Court found the following:

> While Mr. Jacob's credentials are laudable - he is a graduate of the prestigious Massachusetts Institute of Technology and has a law degree from The George Washington University Law School, as well as a notable former career as an examiner in the Patent and Trademark Office - EdgeCo. does not identify any qualifications relevant to discuss the specific matters in this litigation.  In his declaration, Mr. Jacob notes that he is familiar with many "mechanical inventions" and that he has "prepared approximately 1,000 patent applications." (Id. at 10.)  EdgeCo., however, asks this Court to admit Mr. Jacob's testimony as a lay witness with specialized knowledge comparing the products at issue and applying the ASTM D790-96cm test employed in the '229 patent.  EdgeCo. has not offered any specific information regarding how or why Mr. Jacob qualifies to testify regarding these matters. . . .
> [E]ven if Mr. Jacob were qualified to testify as to patent validity and

The most significant issue here remains Mr. Jacob's testimony that includes legal and scientific conclusions. EdgeCo. has failed to present any grounds for admitting Mr. Jacob's legal conclusions regarding performance of the reference deflection test and his determination that All Metal screw covers fall within the parameters of deflection referred to in the '229 patent.

Federal Rule of Evidence 701 provides,

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Lay witness testimony is permissible, pursuant to the Rules, where it is rationally based on the perceptions of the witness and helpful to the trier of fact. Asplundh Mfg. Div. v. Benton Harbor Enr'g, 57 F.3d 1190, 1193 (3d Cir. 1990). Lay witnesses may also testify about scientific or technical matters where the trial judge has determined the lay witness is qualified to render such an opinion. Id. at 1193.

---

infringement, there is insufficient support for the conclusions he reaches, and therefore, the conclusions are unreliable. In support of his legal conclusion that EdgeCo. and All Metal products have similar characteristics, Mr. Jacob states "both peel and stick screw covers have a veneer member with an exposed upper surface and an adhesive contact surface and both are relatively stiff." (Decl. Arthur Jacob at ¶ 11.) Mr. Jacob states that he tested the flexibility of the All Metal product, applying the ASTM D790-96cm reference deflection test in EdgeCo.'s attorneys' office. (Id.) Mr. Jacob's explanations do not offer any additional information describing the test method applied or any recording of the results; he merely concludes, "the All Metal screw covers fit easily within the parameters of deflection referred to in the '229 patent." (Supplemental Decl. Arthur Jacob at ¶ 18.) Mr. Jacob's conclusions that the All Metal and FastCap products are identical suffer from the same deficiency - - an absence of sufficient information explaining how Mr. Jacob reached these conclusions.

Even if the significant question of permitting a lay witness to testify about patent validity was not presented here, Mr. Jacob's conclusions are simply not supported by any evidence beyond his bald assertions.  Mr. Jacob's sworn affidavits present no explanation or supporting documentation that would allow this Court to conclude that his statements satisfy the lesser requirements set forth in the Federal Rules of lay witnesses.

> Rule 701's requirement that the opinion be 'rationally based on the perception of the witness demands more than that the witness have perceived something firsthand; rather, it requires that the witness's perception provide a truly rational basis for his or her opinion.  Similarly, the second requirement--that the opinion be 'helpful to a clear understanding of the witness's testimony or the determination of a fact in issue'--demands more than that the opinion have a bearing on the issues in the case; in order to be 'helpful,' an opinion must be reasonably reliable.  In other words, Rule 701 requires that a lay opinion witness have a reasonable basis grounded either in experience or specialized knowledge for arriving at the opinion that he or she expresses.

Asplundh Mfg. Div., 57 F.3d at 1201 (citation omitted). When considering lay witness testimony requiring specialized expertise or training, the trial judge, functioning as a gatekeeper, determines the witness's qualifications to opine on the issue. Id.  When a lay witness seeks to opine on technical matters, "the trial judge should rigorously examine the reliability of the lay opinion by ensuring that the witness possesses sufficient special knowledge or experience which is germane to the lay opinion offered." Id.

This Court finds that Mr. Jacob's testimony regarding the exchange of correspondence and his retention in anticipation of this litigation are admissible, and denies, in part, FastCap's motion to strike that same testimony.  FastCap's motion to strike is granted as to Mr. Jacob's scientific and legal conclusions because EdgeCo. failed to provide sufficient evidence that Mr. Jacob qualifies as an expert or lay witness with the requisite specialized knowledge.

## **CONCLUSION**

This Court concludes there have been no intervening changes in controlling law, no evidence made available that was not previously available, nor a clear error of law in the July 8, 2005 Opinion of this Court. Plaintiff merely seeks a revisitation of the arguments already considered by this Court in rendering its earlier decision, and, as a result, fails to carry its burden as the moving party. For the stated reasons, Plaintiff's motion seeking reconsideration is denied.


     S/Joseph A. Greenaway, Jr.
     JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: September 26, 2005